# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

————————————

### No. 201600118

————————————

### UNITED STATES OF AMERICA
Appellee

v.

### JEREMY E. HASSETT
Chief Petty Officer (E-7), U.S. Navy
Appellant

————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Captain Charles N. Purnell, JAGC, USN.
For Appellant: Commander R.D Evans, JR., JAGC, USN.
For Appellee: Lieutenant Commander Justin C. Henderson, JAGC, USN; Lieutenant Jetti L. Gibson, JAGC, USN.

————————————

Decided 6 December 2016

————————————

Before CAMPBELL, RUGH, and GROHARING, *Appellate Military Judges*

————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

————————————

RUGH, Judge:

A military judge sitting as a special court-martial convicted the appellant pursuant to his pleas of three specifications of failure to obey a lawful order in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892; one specification of damaging non-military property in violation of Article 109, UCMJ, 10 U.S.C. § 909; and two specifications of assault consummated by a battery in violation of Article 128, UCMJ, 10 U.S.C. § 928.[1] The military judge

_____

[1] The appellant was charged with, and pleaded guilty to, four specifications of assault consummated by battery. However, prior to the announcement of sentence,

sentenced the appellant to 85 days' confinement, reduction to pay grade E-5, and a bad-conduct discharge.

The convening authority (CA) approved the sentence and, pursuant to a pretrial agreement (PTA), suspended the bad-conduct discharge until the end of the appellant's obligated service at which time, unless sooner vacated, it was to be remitted without further action.[2]

Subsequently, the cognizant special court-martial convening authority (SPCMCA) convened a vacation hearing pursuant to RULE FOR COURTS-MARTIAL (R.C.M.) 1109, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). On 11 May 2016, the general court-martial convening authority (GCMCA) vacated the suspended bad-conduct discharge.

The appellant now raises three assignments of error (AOE): (1) that the court-martial order (CMO) failed to correctly reflect the consolidation of three specifications of assault consummated by battery into one specification; (2) that the vacation hearing denied the appellant due process under the law; and (3) that the military judge committed plain error when he admitted prosecution exhibits containing uncharged misconduct during the presentencing phase of the court-martial.

We agree with the appellant's first and second AOE and will direct and take corrective action in our decretal paragraph. Otherwise, we conclude the findings and sentence are correct in law and fact, and we find no other error materially prejudicial to the appellant's substantial rights. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

The appellant, assigned to Navy Recruiting District Philadelphia, had a tumultuous and abusive relationship with his domestic partner, K.R. On 14 March 2015, while staying at a cabin with K.R. and her four children, the appellant assaulted K.R., grabbing her hair, dragging her across the ground, striking her with an empty softball bag, and slapping her with his open palm.

---

the military judge consolidated three of the specifications into one as an unreasonable multiplication of charges, finding that the three specifications unreasonably exaggerated the appellant's criminality. Record at 142.

[2] Pursuant to the PTA, the CA also remitted any *automatic* reduction in grade below the pay grade of E-5. The appellant received 139 days pretrial confinement credit and was released from the confinement facility following his December 2015 trial.

Two months later on 7 and 8 May 2015, the appellant violated a military protective order (MPO)—issued after the cabin altercation—by meeting with K.R., first at a casino and then again outside her home near Bethlehem, Pennsylvania, resulting in the appellant angrily punching through a room window.

Subsequently, on 17 July 2015, appellant again violated the MPO when he met up with K.R. at a casino, and then grabbed her by the back of the neck after becoming angry with her.

## II. DISCUSSION

### A. Incorrect CMO

At court-martial, the appellant pleaded guilty to four specifications of assault consummated by battery based upon the three incidents at the cabin on 14 March 2015 and the single incident at the casino on 17 July 2015. After findings, but before the announcement of sentence, trial defense counsel moved for Specifications 1, 2, and 3 of Charge III—the cabin assaults—to be merged as an unreasonable multiplication of charges.

The military judge agreed, finding that the three assaults at the cabin were a "continuing course of conduct that lasted over, a brief period of time of 10 minutes, and that charging each distinct act and what was a continuing, ongoing assault exaggerate[d] the [appellant's] criminality in this matter."[3] The military judge then consolidated the specifications, reading a new specification into the record and ordering the Report of Results of Trial (RROT) to reflect the consolidated specification in lieu of the three original specifications.[4]

While the RROT, prepared immediately after trial, correctly identified that the appellant was found guilty of only two specifications of assault consummated by battery, the CMO of 28 March 2016 listed all three original specifications instead of the military judge's consolidated specification and does not otherwise reflect the consolidation of the three specifications.

The appellant now asserts that this error demonstrated a misunderstanding by the CA as to the degree of the appellant's criminality and thereby prejudiced the appellant's clemency request. We agree there was error, but find that it did not materially prejudice the appellant.

---

[3] Record at 142.

[4] *Id.* at 143.

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." R.C.M. 307(c)(4). Unreasonable multiplication of charges is a concept distinct from mulitiplicity. *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001). It "addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion." *Id.* The concept "may apply differently to findings than to sentencing." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012).

The appropriate remedy depends on the nature of the harm. *Id.* (citing *Quiroz*, 55 M.J. at 339). If the military judge finds unreasonable multiplication of charges as applied to the sentence, the military judge may merge offenses only for purposes of sentencing. *United States v. Thomas*, 74 M.J. 563, 568 (N-M. Ct. Crim. App. 2014) (citing *Campbell*, 71 M.J. at 25).

However, "[w]hen a military judge is presented with findings that reflect an unreasonable multiplication of charges that cannot be adequately addressed by merging the charges for sentencing purposes, the military judge must then decide whether to consolidate or dismiss the affected specifications." *Id.*

> Consolidation is accomplished by simply combining the operative language from each specification into a single specification that adequately reflects each conviction.
>
> When consolidation is impracticable, such as when the guilty findings involve violations of different UCMJ articles, military judges should consider a conditional dismissal of one or more findings. Conditional dismissals "become effective when direct review becomes final in the manner described in Article 71(c), UCMJ" and therefore "protect the interests of the Government in the event that the remaining charge is dismissed during [appellate] review."

*Id.* at 569 (quoting *United States v. Britton*, 47 M.J. 195, 203-05 (C.A.A.F. 1997) (Effron, J., concurring) (alteration in original).[5]

While he initially considered merging Specifications 1, 2, and 3 of Charge III for sentencing only, the military judge eventually

---

[5] S*ee, e.g. United States v. Parker*, 75 M.J. 603 (N-M. Ct. Crim. App. 2016) (reviving the conditionally dismissed sexual assault conviction after finding the rape conviction factually and legally insufficient), *rev. denied*, 75 M.J. 342 (C.A.A.F. 2016).

consolidated the three specifications, combining the operative language from each specification into a single specification that adequately reflected each offense. The military judge read the consolidated specification into the record and ordered the consolidated specification be reflected in the RROT. As the chosen remedy, the consolidated specification should have been reflected in the CMO as well. R.C.M. 1114(c)(1) (stating that the CMO must set forth "the charges and specifications, or a summary thereof, on which the accused was arraigned; the accused's pleas; [and] the findings or other disposition of each charge and specification").[6]

Having found error in the CMO, we next determine whether the error prejudiced the appellant. "When assessing prejudice for post-trial error in SJARs and CMOs, courts only require the appellant make 'some colorable showing of possible prejudice.'" *United States v. Stevens*, 75 M.J. 548, 552 (N-M. Ct. Crim. App. 2015) (quoting *United States v. Chatman*, 46 M.J. 321, 323-24 (C.A.A.F. 1997)). We find the appellant has not met this low threshold.

Just as in *Stevens*, the three specifications erroneously listed in the CMO here make clear the conduct alleged involved the same victim at the same location on the same date. 75 M.J. at 551-52. The CMO indicates the CA considered the record of trial and the RROT, which each reflect the consolidated specficiation in some manner. Additionally, similar to *Stevens*, who received "a highly favorable [PTA] that suspended all confinement and forfeitures" prior to the error in the CMO, the CA and the appellant here previously agreed upon a favorable PTA that suspended the bad-conduct discharge. *Id.* at 552.[7] Under these circumstances, we find no colorable showing of possible prejudice merely because the CMO failed to correctly record the consolidated specification.

Nevertheless, the appellant is entitled to have the CMO accurately reflect the results of the proceedings. *Id.* (citing *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998). We thus order corrective action in our decretal paragraph.

---

[6] *See e.g. United States v. Nelms*, No. 201400369, 2016 CCA LEXIS 227, at *17, unpublished op. (N-M. Ct. Crim. App. 14 Apr 2016).

[7] *See also United States v. White*, No. 9900662, 2002 CCA LEXIS 50, at *23, unpublished op. (N-M. Ct. Crim. App. 5 Mar 2002) (finding no prejudice in the face of erroneously reported CMO findings because the appellant was sentenced to confinement for 90 days when the maximimum sentence to confinement was over 16 years).

**B. The vacation hearing**

The appellant's PTA provided, in part, that any adjudged punitive discharge would be suspended until the appellant's end of obligated service (EAOS), at which time, unless sooner vacated, the suspended discharge would be remitted without further action.[8] The PTA also stated that should the appellant commit any misconduct after the date of the CA's action, the CA could, after complying with the procedures set forth in R.C.M. 1109, vacate any periods of suspension agreed to in the PTA.

On 17 April 2016, the appellant was arrested by civilian authorities for assaulting K.R. On 27 April 2016, the cognizant SPCMCA provided written notice to the appellant that a hearing would be conducted to determine whether the 17 April incident warranted vacating the suspension of his bad-conduct discharge. The hearing was scheduled for two days later.

In addition to informing the appellant of his rights at the hearing, the notification provided this background on the underlying misconduct triggering review:

> On 17 April 2016, you were arrested by the Lower Saucon Township Police Department and charged with aggravated assault, unlawful restraint, attempted simple assault, reckless endangerment, and harassment of [K.R.].[9]

The SPCMCA, serving as hearing officer, convened the vacation hearing on 29 April 2016. The appellant was represented by his trial defense counsel, and the entire hearing lasted 65 minutes.

At the opening, the hearing officer advised the appellant that he was accused of aggravated assault, unlawful restraint, attempted simple assault, reckless endangerment, and harassment, which, if true, would violate his pretrial agreement. As proof, counsel representing the government presented the telephonic testimony of the civilian police officer who responded to the scene and four exhibits: the notification of vacation hearing; the PTA; the RROT and CMO from

---

[8] Without accounting for potential periods of tolling that may have occurred after the CA's action, the appellant's original EAOS was 23 September 2016. Appellate Exhibit V.

[9] Appellee's Motion to Attach Vacation Hearing Documents of 19 May 2016, Appendix 1 [herineafter Motion to Attach] at 10.

6

the appellant's court-martial; and a Lower Saucon Police Department criminal complaint.[10]

Following the hearing, the hearing officer completed DD Form 455, "Report of Proceedings to Vacate Suspension of a Special Court-Martial Sentence including a Bad-Conduct Discharge." Although not submitted as an exhibit during the hearing, in Block 4 of this form, the hearing officer listed "MPO of 17 Dec 15" as a supporting document.[11]

Similarly, while not raised in the hearing notice or in the hearing officer's opening advisement, in Block 5, "alleged violation(s) of conditions of suspension," the hearing officer wrote that the appellant "violated the terms of his pre-trial agreement (PTA) by his misconduct of being arrested and charged with aggravated assault, unlawful restraint, simple assault, reckless endangerment, and harassment. *He also violated a military protective order.*"[12]

The hearing officer further remarked:

> The evidence clearly demonstrated that [the appellant] violated the terms of his PTA. After reviewing the police report, the MPO issued after his court-martial, and taking the testimony of the arresting police officer, I determined that [the appellant] committed misconduct. He assaulted the same person he victimized before his court-martial and violated a MPO. There simply is no excuse for his conduct. I strongly recommend that the suspended portion of [the appellant's] punishment be vacated.[13]

The report was forwarded to the GCMCA, who concurred with the hearing officer's recommendation and vacated the appellant's suspended discharge on 11 May 2016. In doing so, the GCMCA stated that he relied on the record of the vacation hearing proceedings with all exhibits and the recommendation of the hearing officer. He further explained:

---

[10] Defense counsel objected to the criminal complaint on the basis it was cumulative to the police officer's testimony. The hearing officer accepted the report over this objection. Likewise, K.R. did not testify at the hearing but was instead declared unavailable for the hearing over defense counsel's objection.

[11] Motion to Attach at 43.

[12] *Id.* (emphasis added).

[13] Motion to Attach at 45.

"After reviewing the Record of Proceedings, all exhibits submitted by the government representative and probationer's counsel, and the recommendation of [the hearing officer], I find that [the appellant] committed misconduct. [The appellant] was arrested, and is currently incarcerated, for assaulting the same victim of his special court-martial. This misconduct is in clear violation of his pretrial agreement. The bad conduct discharge is appropriate."[14]

The appellant now contends the vacation hearing failed to provide him with due process. We agree and set aside the vacation of the appellant's suspended discharge.

Article 72, UCMJ, requires a hearing before the vacation of the suspension of any special court-martial sentence that includes a bad-conduct discharge. Such hearings, referred to as vacation hearings, are conducted in accordance with R.C.M. 1109.[15]

Article 72, UCMJ, and R.C.M. 1109 are designed to "provide[] the accused the fundamental due process protections required in probation revocation hearings, as set forth by the Supreme Court in *Gagnon v. Scarpelli*, 411 U.S. 778 . . . (1973) and *Morrissey v. Brewer*, 408 U.S. 471 . . . (1972)." *United States v. Englert*, 42 M.J. 827, 830 (N-M. Ct. Crim. App. 1995) (citing *United States v. Bingham*, 3 M.J. 119, 121 (C.M.A. 1977)).[16]

---

[14] Motion to Attach at 46.

[15] Vacation hearings held pursuant to R.C.M. 1109 incorporate notice, witness and evidence procedures provided by R.C.M. 405, a rule otherwise applicable to Article 32, UCMJ, preliminary hearings. The appellant's vacation hearing was held on 29 April 2016. Thus, the hearing was conducted in accordance with R.C.M. 1109 as modified on 17 June 2015 by Executive Order (EO) 13696. 80 Fed. Reg. 35,787 ( June 22, 2015). EO 13696 substantially overhauled R.C.M. 405, thereby changing vacation hearing procedures. Subsequent to the appellant's vacation hearing, and therefore not applicable here, vacation hearing procedures were again modified on 20 May 2016 by EO 13730. 81 Fed. Reg. 33,334 (May 26, 2016). The appellant's brief bases its due process arguments on the original version of R.C.M. 405—no longer in effect at the time of appellant's vacation hearing. Regardless, R.C.M. 405(d) as incorporated by R.C.M. 1109, on which we base our analysis, remained largely the same through all iterations of the rule.

[16] *See also United States v. Suttle*, No. NMCCA 201100030, 2011 CCA LEXIS 178, unpublished op. (N-M Ct. Crim. App. 31 Oct. 2011).

The Supreme Court has held that due process requires, in part, "written notice of the claimed violations of parole" and "disclosure to the parolee of evidence against him[.]" *Morrissey*, 408 U.S. at 489.[17] This is reflected in R.C.M. 1109(d)(1)(B)(iii), which requires that before a vacation hearing, "the officer conducting the hearing shall cause the probationer to be notified in writing of . . . alleged violation(s) of the conditions of suspension and the evidence expected to be relied on[.]" The notice requirement is based in the notion that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id*. at 482.

We review vacation proceedings to ensure compliance with fundamental due process protections.[18]

Here, the hearing officer considered an MPO issued to the appellant on 17 December 2015 as evidence of the appellant's violation of the conditions of his suspension.[19] However, the alleged MPO violation was not included in the notice of the hearing, in the hearing officer's verbal advisement at the hearing, or as an exhibit presented by Government counsel during the hearing. Only passing reference was made to the MPO in the summarized record of the hearing, and the MPO was not included in the exhibits attached to the DD Form 455. It remains unclear from the record whether the MPO was even applicable on 17 April 2016, the date of the alleged violation.

The hearing officer prominently listed the MPO violation as one of the breaches of the appellant's conditions of suspension, and he made clear that he gave weight to the MPO violation when recommending the appellant's sentence be vacated. This matter was then considered by the GCMCA in arriving at a final adverse determination.

---

[17] *See Bingham*, 3 M.J. at 120-21 (applying this requirement to military vacation hearings).

[18] *See United States v. Miley*, 59 M.J. 300 (C.A.A.F. 2004) (setting aside the determination of a vacation hearing based on a failure to comply with R.C.M. 1109 procedures).

[19] The date of the MPO is mere conjecture based solely on its mention in Block 4 of the hearing officer's report. This reference implies the hearing officer had some knowledge of the MPO, but where that knowledge came from remains inscrutable from the record.

While the facts necessary to prove the assault allegations and MPO allegation overlap, the two offenses are sufficiently distinct such that being notified of the assault allegations did not provide the appellant constructive notice of the MPO allegation. Without proper notice, the appellant was not given the opportunity to prepare for or present a defense to the MPO violation. The omission of notice regarding the alleged MPO violation was in clear contravention of R.C.M. 1109(d)(1)(B)(iii), and the minimum requirements of due process as set out by the Supreme Court in *Morrissey* and C.A.A.F. in *Bingham*.

Under these circumstances, we find that the vacation of the appellant's bad-conduct discharge suspension was substantively invalid because it was premised on an improperly conducted hearing. As this was a structural error, further analysis for prejudice would be inappropriate.[20] Therefore, the vacation will be set aside.

## C. Evidence of prior misconduct at presentencing

During the presentencing phase of trial, the military judge admitted Prosecution Exhibits 2 and 8 without defense objection. Prosecution Exhibit 2 included a statement by K.R. that "there have been assaults in the past that have not been reported," and that when she and the appellant "were in Indiana [the appellant] beat the f[***] out of me."[21] Prosecution Exhibit 8 included information regarding a prior, civilian domestic violence charge that was dismissed over a year before trial.

The appellant now asserts it was plain error for the military judge to admit Prosecution Exhibits 2 and 8 under R.C.M. 1001(b) because the exhibits contained evidence of uncharged misconduct and criminal charges dismissed prior to conviction.

As indentified by the appellant in his brief, we review the military judge's decision to admit evidence when the appellant does not object at trial for plain error. *United States v. Ramirez*, No. 200800055, 2009 CCA LEXIS 453, at *7 unpublished op., (N-M. Ct. Crim. App. 17 Dec. 2009) (citing *United States v. Powell*, 49 M.J. 460, 463-65 (C.A.A.F. 1998)). In order to prevail on a claim of plain error, an appellant must

---

[20] *See Miley*, 59 M.J. at 304-05 (declining to test for prejudice before setting aside the vacation of a suspended sentence because "we will not speculate as to what decision the GCMCA may have made if the SPCMCA had properly" followed the procedures in R.C.M. 1109).

[21] Prosecution Exhibit 2 at 7.

persuade the court that: (1) an error was committed; (2) the error was clear or obvious; and (3) the error resulted in material prejudice to a substantial right of the appellant. *Id.* at *7-8 (citation omitted).

Because the appellant's court-martial was by military judge alone, he faces "a particularly high hurdle." *Id.* at *8. Military judges are presumed capable of filtering inadmissible evidence, to know and apply the law correctly, and not to rely on inadmissible evidence. *Id.*[22]

Here, the appellant is unable to leap that particularly high hurdle. Assuming without deciding that the exhibits contained improper aggravation evidence, we are confident the admission of this evidence did not alter the appellant's sentence or result in any other material prejudice to the appellant's substantial rights. It thus did not amount to plain error.

### III. CONCLUSION

The findings and sentence, as approved by the CA, are affirmed. The supplemental court-martial promulgating order shall correctly reflect that Specifications 1-3 of Charge III were consolidated by the military judge and that the appellant was found guilty of the following consolidated Specification 1 of Charge III, as follows:

> In that Chief Air Controller Jeremy E. Hassett, U.S. Navy, Navy Recruiting District, Philadelphia, Pennsylvania, on active duty, did at or near 4200 South Lake Mary Road, Flagstaff, Arizona, on or about 14 March 2015, unlawfully grab the hair of K.R. with whom he cohabitated as a person similarly situated to a spouse and drag her across the ground with his hand, unlawfully strike the body of K.R. with a softball bag multiple times and unlawfully strike K.R. in the face by slapping her with an open palm.[23]

We set aside the action of the GCMCA in vacating the suspension of the sentence to a bad-conduct discharge. The record of trial is returned

---

[22] In *Ramirez*, this court found that evidence of the appellant's pre-service marijuana use was insufficiently "related in time, type, or outcome to the convicted crime to qualify as proper evidence in aggravation." 2009 CCA LEXIS 453, at *8 (citing *United States v. Hardison*, 64 M.J. 279, 281-82 (C.A.A.F. 2007)). Regardless, utilizing the standard applied to military judge-alone proceedings, we found that admission of pre-service drug use did not rise to the level of plain error. *Id.*

[23] Record at 142-43.

to the Judge Advocate General for action consistent with this opinion.

Senior Judge CAMPBELL and Judge GROHARING concur.

For the Court



R.H. TROIDL
Clerk of Court