*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, GANNON and HARRELL,
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Anthony D. GRAFTON**
Yeoman Petty Officer Third Class (E-4), U.S. Navy
*Appellant*

**No. 202400055**

_____

Decided: 11 August 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Andrea K. Lockhart

Sentence adjudged 3 November 2023 by a general court-martial convened at Naval Base San Diego, San Diego, California, consisting of enlisted members, and a military judge. Sentence in the Entry of Judgment: reduction to E-1, confinement for eight years, forfeiture of all pay, and a dishonorable discharge.

For Appellant:
*Ms. Kimberly D. Hinson*

For Appellee:
*Lieutenant Commander James P. Wu Zhu, JAGC, USN* (on brief)
*Major Mary Claire Finnen, USMC* (argued)

Senior Judge KISOR delivered the opinion of the Court, in which Judge GANNON joined. Senior Judge HARRELL concurred in part and dissented in part.

————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

————————————

KISOR, Senior Judge:

Appellant was convicted, contrary to his pleas, of one specification of sexual assault without consent (Specification 1) and one specification of sexual assault while the named victim was incapable of consenting because she was impaired by an intoxicant (Specification 2), in violation of Article 120, Uniform Code of Military Justice (UCMJ). After findings were announced, the military judge conditionally dismissed Specification 2 of the Charge without prejudice to ripen into prejudice at the completion of appellate review.[1] Appellant asserts seven assignments of error (AOE):

I. Is a new trial required where the members prematurely deliberated on Appellant's guilt throughout the Government's case in violation of the military judge's instructions?

II. Were the trial defense counsel ineffective when they failed to challenge the panel members for cause or move for a mistrial based on the members' premature deliberations throughout the Government's case and instead advised Appellant to waive the issue?

III. Did the court-martial lack jurisdiction due to the military judge's inactive status with the state bar of California?

IV. Is the evidence factually sufficient to support a finding of guilty for Specification 1 of the Charge?

V. In light of *United States v. Mendoza*, whether the evidence is legally insufficient to support the finding of guilty to the sexual assault without consent?

---

[1] R. at 1056-57.

VI.     In light of *United States v. Mendoza*, were the instructions errone-
ous?

VII.    In light of *United States v. Mendoza*, were the members' findings
legally impossible and thus void?

We find prejudicial error with respect to AOE VI as a result of the Court of
Appeals for the Armed Forces (CAAF) opinion in *United States v. Mendoza.* We
set aside the finding of guilty as to Specification 1 and dismiss it, and we rein-
state and affirm the finding of guilty as to Specification 2. We reassess and
affirm the same sentence.

## I. BACKGROUND

The afternoon of 5 September 2022, which was Labor Day, V.L., J.P. and
some friends had a picnic in a park in Chula Vista, California. Both V.L and
J.P. were then enlisted Navy Sailors stationed in San Diego.[2]  They both re-
sided in Regelin Hall, a barracks onboard Naval Station San Diego. After the
picnic, V.L., who was not yet 21 years old, bought two bottles of champagne
and some orange juice, and she and J.P. returned to Regelin Hall to watch
movies in J.P.'s barracks room. The two drank mimosas and V.L. became very
drunk. V.L. left J.P.'s room sometime after 10:00 p.m.

V.L. went to the front desk in the lobby of Regelin Hall to get a new key for
her barracks room. The front desk staff member who made her a new key de-
scribed her as "intoxicated, disheveled, messed up hair, kind of slurring her
words."[3] Another witness present in the lobby described her as "intoxicated"
and "staggering."[4] After obtaining the new room key, V.L. got back on the ele-
vator by herself.[5]

When V.L. had not returned to J.P.'s barracks room, she began calling
V.L.'s cell phone. She made approximately 20 calls to V.L. over the next 90
minutes with no answer. Finally, J.P. received a call back from V.L.'s cell phone
which lasted about 7 minutes. Although V.L. did not say anything on the call,

---

[2] Both V.L and J.P. were civilians at the time of trial in October and November,
2023.

[3] R. at 610.

[4] R. at 556.

[5] R. at 611.

she was moaning.[6] J.P. became concerned, and she left her room to go look for V.L.[7]

J.P. went down the hall to the elevator and pressed the button. J.P. testified that when the elevator door opened, "the first thing I saw was [V.L.] lying on the floor. She didn't seem conscious. Her pants were off. And I saw a man on top of her."[8] She testified that "he was laying on her, like missionary position, and I saw back and forth movement."[9] In response to trial counsel's question, "[a]nd what did he appear to be doing at the time that you walked on the elevator?" J.P testified, "[e]ssentially, like, having sex with her."[10] The man was Appellant.

J.P testified Appellant "immediately started to panic."[11] J.P. then began taking pictures of Appellant with her phone, and then also videorecorded Appellant and the interior of the elevator. The pictures of Appellant and the video, in which Appellant identifies himself in response to J.P.'s questioning, were admitted as Prosecution Exhibits 2 and 3. In the video, V.L. is clearly unconscious, naked from the waist down, and Appellant is attempting, unsuccessfully, to put V.L.'s underwear back on.[12]

The elevator returned to the lobby with J.P., V.L., and Appellant inside. The front desk staff member testified that when the door opened in the lobby, "the person that I saw before fell down to the ground, and the guy [Appellant] helped her – well, basically grabbed her and put her onto the chair."[13] She described V.L as "lifeless, like, she wasn't able to move herself."[14] She called base police and when base police responded, they called an ambulance.[15] By the time emergency medical personnel arrived, V.L. was awake enough to state that she did not want medical assistance. The front desk staff member testified that

---

[6] R. at 494.

[7] R. at 495.

[8] R. at 467.

[9] R. at 468.

[10] R. at 469.

[11] R. at 469.

[12] Pros. Ex. 3.

[13] R. at 612.

[14] R. at 614.

[15] R. at 614.

"[V.L.] was on the ground, and she had urinated all over herself when that happened when they were all there."[16]

A base policeman, Master-at-Arms Second Class (MA2) J.A., approached Appellant, who said, "I deserve everything that's coming to me, and I know what I did – or I understand what I did."[17] MA2 J.A. put Appellant in the back of a police car. MA2 J.A. testified that when he returned to the police car, Appellant had fallen asleep and the car smelled like alcohol.[18]

The emergency medical personnel transported V.L. to a hospital, where a forensic sexual assault examination was performed the next day.[19] V.L. stated that she had pain in her vaginal area, and the forensic sexual assault exam revealed multiple lacerations there.[20] A toxicology screen revealed that her blood alcohol concentration was incredibly high — very probably over 0.3 percent — at 2330 the previous evening.[21]

At trial V.L. testified that she had no memory of the events that occurred shortly after leaving J.P.'s room. "I remember [J.P.] texting me to come back. I remember ignoring it. Walking to the elevator, pressing the button, and waking up in the hospital."[22] V.L. also testified that before that night in the elevator she had never met Appellant.[23]

The Government charged Appellant with two specifications of sexual assault under Article 120, UCMJ. Specification 1 alleged that Appellant penetrated V.L.'s vagina with his penis without her consent; Specification 2 alleged Appellant penetrated her vagina with his penis when V.L. was incapable of consenting because she was impaired by alcohol, and Appellant reasonably should have known of that condition.[24]

---

[16] R. at 614.

[17] R. at 640.

[18] R. at 645.

[19] R. at 738; Pros. Ex. 8.

[20] R. at 752-52.

[21] R. at 862-866.

[22] R. at 506.

[23] R. at 535.

[24] Charge sheet.

During the trial, it became known to the parties that the members had been discussing the case during breaks despite the military judge's standard admonition not to do so.[25] When questioned by the military judge as to whether he recalled her instruction to the members not to discuss the case, the Senior Member stated that he "vaguely" remembered that but "we asked the bailiff if we could discuss this in the deliberation room as long as we were all in the deliberation room."[26] The members discussed the case every time they went into the deliberation room.[27]

Despite this revelation, and after consultation with supervisory counsel, the Defense indicated that they would make no motion for a mistrial or any other type of relief.[28] The military judge then explicitly clarified with Appellant and his defense counsel on the record that Appellant was affirmatively waiving his right to make a motion for relief based on these improper deliberations.[29]

The members convicted Appellant of both Specifications under the Charge.[30] Appellant elected to be sentenced by the members.[31] Noting that the Government had charged the two specifications in the alternative, the military judge conditionally dismissed Specification 2 on the condition that "Specification 1 of the Charge surviving final appellate review."[32] The members sentenced Appellant to eight years' confinement, a dishonorable discharge, total forfeiture of pay, and reduction to paygrade E-1.[33]

---

[25] R. at 154, 427, 916-17.

[26] R. at 917.

[27] R. at 917.

[28] R. at 922.

[29] R. at 923.

[30] R. at 1048.

[31] R. at 1055.

[32] R. at 1056-57. (Specification 2 alleged Appellant penetrated V.L.'s vagina with his penis when V.L. was incapable of consenting because she was impaired by alcohol, and Appellant reasonably should have known of that condition.).

[33] R. at 1135.

## II. DISCUSSION

**A. A new trial is not required in this case because Appellant affirmatively waived this issue. Defense Counsel were not ineffective and made a tactical decision to proceed with the trial.**

This Court readily disposes of Appellant's first two Assignments of Error.

*1. Standards of review.*

### a. Waiver

We consider the issue of waiver as a question of law under a de novo standard of review.[34] The CAAF has recognized that waiver can occur either by operation of law, or by the intentional relinquishment or abandonment of a known right.[35] When an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal.[36]

### b. Ineffective assistance of counsel

We review allegations of ineffective assistance of counsel de novo.[37] To prevail on a claim of ineffective assistance of counsel, an appellant must satisfy both prongs of the *Strickland* test. First, an appellant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.[38] This means that an appellant "must show that counsel's representation fell below an objective standard of reasonableness."[39] Further, judicial scrutiny of counsel's performance must be highly deferential, and this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."[40] Second, an appellant must show that the deficient performance prejudiced the

---

[34] *See United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019) (citing *United States v. Rosenthal*, 62 M.J. 261, 262 (C.A.A.F. 2005)).

[35] *See id.* (citing *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018) (quotations omitted)).

[36] *See id.* (citing *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)).

[37] *United States v. Palik*, 84 M.J. 284, 288 (C.A.A.F. 2024) (citing *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007)).

[38] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[39] *Id.* at 688.

[40] *Id.* at 694.

defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.[41] An appellant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.[42]

*2. Analysis.*

As a general matter, we would review a military judge's grant or denial of a mistrial for an abuse of discretion.[43] Appellant's contends that because the military judge did not make findings of fact, the military judge's "decision is subject to de novo review." But the Defense declined to move for a mistrial; and, moreover, did not ask for any other type of relief, such as conducting additional voir dire of the senior member or other members, or asking to craft an additional limiting instruction. Because the Defense did not make any motion, the military judge likewise did not make findings of fact. Regardless, and dispositive of this issue, Appellant unquestionably and explicitly waived review of this issue at trial, extinguishing it here.[44]

Further, Appellant states in his post-trial declaration that his trial defense counsel "told me that we could ask for a mistrial and everything would start over" and "I recall them telling me something like 'we're looking really good right now and should go forward.'"[45] Thus, the decision not to make a motion of any kind was a tactical decision that Appellant's counsel recommended after consulting with Appellant. This was not ineffective assistance of counsel because that recommendation, made during the course of the trial, did not fall below an objective standard of reasonableness. Accordingly, Appellant's first two AOEs are without merit.

**B. The court-martial did not lack jurisdiction due to the military judge's inactive status with the state bar of California.**

Appellant argues that the court-martial lacked jurisdiction because the military judge was an inactive member of the California bar at the time of

---

[41] *Id.* at 687.

[42] *Id.* at 694.

[43] *See United States v. Cabrera*, 83 M.J. 562, 571 (N-M. Ct. Crim. App. 2023).

[44] R. at 922-923.

[45] Appellant's Decl. of 24 June 2024 at para. 6-8. Appellant moved this Court to attach his declaration on 25 July 2024. This Court granted that motion in an Order issued on 15 August 2024.

trial.[46] Inactive members of the California bar are not authorized by the California bar to practice law in California. This trial occurred in San Diego, California. However, this Court has already examined and resolved this issue in favor of the Government in a published decision in *United States v. McNulty.*[47] We need not revisit this issue here.

## C. Impact of *United States v. Mendoza* on the conviction.

The members reached their findings of guilty as to both specifications on 3 November 2023. Appellant filed his Brief and Assignments of Error with this Court on 24 July 2024. On 7 October 2024, the CAAF decided *United States v. Mendoza*, holding that Article 120(b)(2)(A) (sexual assault without consent, when the person is capable of consenting) and Article 120(b)(3)(A) (sexual assault while the other person is impaired by an intoxicant and incapable of consenting, and the accused reasonably should have known of this condition) establish separate theories of liability.[48] Thus, "what the Government cannot do is charge one offense under one factual theory and argue a different offense and a different factual theory at trial."[49] As these are the exact two Specifications of the Charge at issue in this case, we granted Appellant's Motion for Leave to File a Supplemental Brief and Assignments of Error, and granted the Government's motion to file an overlength Answer responding to both.[50] Appellant did not file a Reply. On 17 June 2025, we heard oral argument on the issues in this case relating to the *Mendoza* opinion.

---

[46] Appellant's Brief at 48. Because Appellant is arguing for an eventual change in the law and has cited to the adverse controlling authority, it is perfectly proper for Appellant to raise this issue on appeal. *See* JAGINST 5803.1E (20 Jan 2015) Rules 3.1 and 3.3(2).

[47] *United States v. McNulty*, 84 M.J. 628 (N-M. Ct. Crim. App. 2024) *rev. denied*, 85 M.J. 110 (C.A.A.F. Aug. 15, 2024). Though arguably arising under similar (but not identical) circumstances, *McNulty* is readily distinguishable from *United States v. Painter*, 82 M.J. 806 (N.M. Ct. Crim. App. 2023). In *Painter*, the military judge's *suspension* from the practice of law was a jurisdictional error in the court-martial, rendering the findings and sentence a nullity.

[48] *Mendoza*, 85 M.J. at 218.

[49] *Id.* at 220.

[50] Appellant correctly notes that an appellant gets the benefits of changes to the law between the time of his trial and the time of his appeal.

*1. In light of United States v. Mendoza, were the instructions erroneous?*

The Court reviews whether the instructions given were legally erroneous de novo.[51] Waiver is an intentional relinquishment or abandonment of a known right.[52] Whether an accused has waived an issue is a question of law.[53] It is axiomatic that this Court reviews questions of law de novo.[54] Forfeiture is the failure to make a timely assertion of a right. This Court will not review waived issues, because, as the CAAF has stated, a valid "waiver leaves no issue to correct on appeal."[55]

In contrast, this Court reviews forfeited issues under a plain error standard.[56] Plain error is an error that is clear or obvious and results in material prejudice to a substantial right.[57] Without question, legally incorrect members' instructions implicates a substantial right, and where plain and obvious error implicates a constitutional right, the Government must prove that the error was harmless beyond a reasonable doubt.[58]

### a. Specification 1

Appellant contends that because the Government chose not to charge Appellant with a violation of Article 120(b)(2)(B) (sexual assault when the accused knows, or reasonably should know, that the other person is asleep, unconscious, or otherwise unaware that sexual act is occurring), the military judge committed error when she instructed the members, separately with respect to both Specifications 1 and 2, that "a sleeping, unconscious, or incompetent person cannot consent."[59]

The CAAF in *Mendoza* was clear: charging "without consent" under Article 120(b)(2)(A) is only applicable where the government's theory is that the victim

---

[51] *See United States v. Killion*, 75 M.J. 209, 214 (C.A.A.F. 2016).

[52] *United States v. Ahern*, 76 M.J 194, 197 (C.A.A.F. 2017) (citing *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)).

[53] *Id.*

[54] *United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019).

[55] *Id.* at 20 (internal quotation and citation omitted).

[56] *United States v. Harcrow*, 66 M.J. 154, 156 (C.A.A.F. 2008).

[57] *See United States v. McPherson*, 81 M.J. 372, 377 (C.A.A.F. 2021).

[58] *See Harcrow*, 66 M.J. at 160.

[59] Appellant's Supp. Brief at 20; R. at 694. The Defense properly preserved this objection at trial. R at 945. AE XXXI at 2.

is a person capable of consenting who did not consent.[60] The Government, for its part, contends that this instruction was not erroneous because it is a correct statement of the law, and is codified in of Article 120(g)(7)(B).[61] The Government's position here is irreconcilable with *Mendoza.*

Applying *Mendoza*, we hold that the military judge erred when instructing the members, *in the specific context of Specification 1,* that a sleeping or unconscious person cannot consent such that they could find Appellant guilty as charged to sexual assault "without consent."[62]

We find that this error was not harmless beyond a reasonable doubt. Trial counsel argued in his closing argument, *only in the specific context of Specification 1,* that, "[t]he United States believes that the evidence shows beyond a reasonable doubt that [V.R.] was either completely unconscious or asleep while the accused was penetrating her with his penis."[63] Thus, we cannot be convinced that trial counsel's direct reference to an erroneously given instruction had no effect on the members. Accordingly, we will set aside the guilty finding as to Specification 1.

### b. Specification 2

In instructing on Specification 2, the military judge likewise stated that "a sleeping, unconscious, or incompetent person cannot consent."[64] The Defense did not challenge this instruction at trial for Specification 2, as it had done

---

[60] *Mendoza*, 85 M.J. at 215. The Government contends that "there is no requirement that the United States prove an alleged victim have the capacity to consent when charging sexual assault without consent as that is not included in the plain language of the statute." Government's Mot. to Cite Supp. Authority at 2; *see United States v. Mendoza*, No. ARMY 20210647, slip op. at 8 (Army Ct. Crim. App. Jun. 27, 2025) (*Ewing, J.,* concurring) (stating that "[n]othing in [UCMJ Art. 120(g)(7)(A)] creates an additional requirement for the government to first show competency before establishing that the defendant did an act *without consent.*" (emphasis in original)). However, in this case we need not go so far as to decide whether "capable of consenting" is now an additional element of Article 120(b)(2)(A) that must be proven beyond a reasonable doubt as we will set aside the finding of guilty as to Specification 1 based on instructional error.

[61] Government's Answer at 76; Government's Mot. to Cite Supp. Auth. at 2.

[62] We recognize that the military judge and the parties did not have the benefit of reading the *Mendoza* decision as it post-dates this trial.

[63] R. at 990.

[64] R. at 969.

with respect to Specification 1.[65] Despite the lack of objection, we conclude that this issue is not forfeited because *Mendoza* had not yet been decided. Thus, defense counsel's failure to object at trial to the inclusion of the instruction is more appropriately treated as forfeiture, which requires further analysis under the plain error standard.[66]

We do not believe that that the holding of *Mendoza* can be extended to require complete separation of the concepts of being impaired by alcohol to the point of being incapable of consenting to a sexual act, and being unconscious due to consumption of alcohol, and therefore incapable of consenting to a sexual act.[67] This is because there is a *partial* overlap in the concepts of Article 120(b)(2)(B) (victim sleeping or unconscious) and Article 120(b)(3)(A) (victim incapable of consenting because so drunk as to be impaired, including to the point of unconsciousness).[68] A Venn diagram would illustrate only a partial overlap, as not every unconscious person is impaired by alcohol, and not every person impaired by alcohol is unconscious.[69] However, a person can be so impaired by alcohol as to be unconscious. The CAAF did not address this issue in *Mendoza.* However, the Army Court of Criminal Appeals in *United States v. Toney* did.[70]

In *Toney,* the Army Court of Criminal Appeals considered a case where a soldier had been convicted of two specifications under Article 120 for committing a single sexual act when the victim was incapable of consenting due to impairment by alcohol and was also asleep and unconscious.[71] The Army Court found this to be unreasonably multiplied and merged the specifications into a single specification, which included "when he knew or reasonably should have known she was asleep and unconscious and incapable of consenting to the sexual act due to an impairment by an intoxicant, and that condition was known

---

[65] AE XXXI at 3.

[66] *See Harcrow*, 66 M.J. at 158.

[67] *See United States v. Toney*, No. ARMY 20150565, 2017 CCA LEXIS 1, (Army Ct. Crim. App. Jan. 3, 2017) *aff'd*, 76 M.J. 402 (C.A.A.F. 2017) (mem.).

[68] *See generally Unites States v. Bailey*, 77 M.J. 11, 14 (C.A.A.F. 2017) (observing that "a person can be awake and conscious and still be incapable of consenting.").

[69] The English philosopher John Venn developed graphic diagrams using overlapping circles to show shared characteristics between sets. Venn diagrams are typically introduced to students in elementary school mathematics classes.

[70] *Toney*, 2017 CCA LEXIS 1.

[71] *Id.* at *2-3.

or reasonably should have been known by [appellant]."[72] The Army Court also affirmed the sentence.[73] In turn, the CAAF affirmed the Army Court in a summary disposition reflected in a daily journal entry.[74]

 Thus, in light of the evidence admitted at trial in this case, we do not find inclusion of this instruction to be plain error as to Specification 2, in part because the Court evaluates the military judge's instructions "in the context of the overall message conveyed to the members."[75] In this case, the military judge's instructions on Specification 2 were not conflated with her instructions on Specification 1 — there was a clear transition.[76] Likewise, there was a clear transition in trial counsel's closing argument from Specification 1 to Specification 2. Trial counsel's closing argument focused on the evidence admitted at trial on the impairment due to alcohol consumption.[77]

Assuming arguendo Appellant can meet his burden to establish plain error, any error in including the instruction that "a sleeping, unconscious, or incompetent person cannot consent" with respect to Specification 2 was, in our view, based on the evidence admitted at trial and the contours of the Government's closing argument, harmless beyond a reasonable doubt.

Having concluded that the military judge's instruction that "a sleeping, unconscious, or incompetent person cannot consent" did not rise to the level of plain error with regard to Specification 2, we next consider the procedural posture of Specification 2. Before we can evaluate the evidentiary sufficiency of Specification 2, we must first evaluate whether we can reinstate the conditionally dismissed finding of guilty. Our analysis follows.

*2. The state of the law on reinstating specifications that were conditionally dismissed after findings.*

A military judge's power to conditionally dismiss charges or specifications that are unreasonably multiplied, or were charged in the alternative for contingencies of proof, flows from the inherent power of the court. This power finds its genesis in Army multiplicity jurisprudence from the 1980s. *In United*

---

[72] *Id.* at *5.

[73] *Id.*

[74] 76 M.J. 402 (mem.).

[75] *United States v. Hills*, 75 M.J. 350, 357 (C.A.A.F. 2016) (citation and internal quotation marks omitted).

[76] R. at 967.

[77] R. at 993-99.

*States v. Williamson*, the Army Court of Military Review set aside a finding of guilty as to a charge which was a lesser included offense of a greater charge. But, the court also ordered that "if any reviewing authority subsequently concludes that prejudicial error has tainted the findings of guilty [as to the greater charge] the findings of guilty as to [the lesser charge] can be revived and affirmed without a rehearing."[78] *Williamson* had to do with lesser included offenses, but the power has grown over time.

The concurring opinion in *United States v. Britton*, written by Judge Effron, paved the way for the present practice. In a section of his concurrence titled "A Proposed Approach to Appellate Review Addressing the Interests of the Parties," Judge Effron posited that the CCAs could "enter a 'conditional dismissal' of a colorably multiplicious charge under which the less serious charge would be dismissed without prejudice . . . ." Relevant here, the conditionally dismissed charge could be subject to "reinstatement before the case becomes final" if the more serious charge were dismissed. This evolution of the power to conditionally dismiss multiplicious charges to extend to "colorably multiplicious" charges has further been extended to include charges which would be unreasonably multiplied, as opposed to colorably multiplicious, if left standing, or are charged separately for contingencies of proof, as in this case.

Of course, Article 66 grants the CCAs the power to act with respect to the findings and sentence of a court-martial. But despite recent amendments and revisions, no statute or Rule for Courts-Martial provides for any procedures or standards applicable to either conditional dismissals or reinstatement of conditionally dismissed charges. We are left, therefore, only with court precedent predating the present version of Article 66. Nonetheless, the CCAs have embraced the conditional dismissal power, and conferred it upon trial judges as well. Moreover, the CCAs have reinstated charges conditionally dismissed by military judges when the condition – affirmance of a finding of guilty of another charge – is not satisfied. We will therefore reinstate the finding of guilty as to Specification 2.[79] Having reinstated Specification 2, we next consider whether the specification is legally and factually sufficient.

---

[78] *United States v. Williamson*, 19 M.J. 617, 619 (A.C.M.R. 1984) (citing *United States v. Zupancic*, 18 M.J. 387, 389 (C.M.A. 1984)).

[79] *See United States v. Thomas*, 74 M.J. 563, 569-70 (N-M. Ct. Crim. App. 2014) (citing *United States v. Frazier*, 51 M.J. 501 (C.G. Ct. Crim. App. 1999) (en banc) (restoring and affirming a previously conditionally dismissed Charge)); *United States v. Parker*, 75 M.J. 603, 620 (N-M Ct. Crim. App. 2016) (reviving and affirming a conditionally dismissed specification).

**D. Legal and factual sufficiency of Specification 2.**

*1. Legal sufficiency*

a. <u>Standards of review for legal sufficiency</u>

To determine legal sufficiency, we ask whether, "considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt."[80] We review questions of legal sufficiency de novo.[81] In conducting this analysis, we must "draw every reasonable inference from the evidence of record in favor of the prosecution."[82]

b. <u>Analysis</u>

In order to prove Specification 2 (Article 120(b)(3)(A)), the Government had to prove beyond a reasonable doubt that Appellant committed a sexual act upon V.L. by penetrating her vulva with his penis when V.L. was incapable of consenting to the sexual act because she was impaired by an intoxicant (alcohol), and Appellant reasonably should have known of that condition.[83] We find that a reasonable factfinder could have found all of the elements of Specification 2 proven beyond a reasonable doubt.

V.L., though apparently visibly intoxicated, was able to interact with the building lobby staff and return to the elevator under her own power. At some point thereafter, she and Appellant encountered one another in the elevator. When the elevator door opened sometime later, J.P. observed that V.L. didn't seem conscious. Her pants were off. J.P saw Appellant on top of her.[84] J.P. testified that "he was laying on her, like, missionary position, and I saw back and forth movement."[85] In response to trial counsel's question, "[a]nd what did

---

[80] *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Gutierrez*, 73 M.J. 172, 175 (C.A.A.F. 2014) (citing *United States v. Bennitt*, 72 M.J. 266, 268 (C.A.A.F. 2013)).

[81] Article 66(d)(1), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[82] *United States v. Gutierrez*, 74 M.J. 61, 65 (C.A.A.F. 2015) (citation and internal quotation marks omitted).

[83] Charge S.heet.

[84] R. at 467, 478.

[85] R. at 468.

he appear to be doing at the time that you walked on the elevator?" J.P testified, "[e]ssentially, like, having sex with her."[86] In the video J.P. recorded, V.L. is clearly unconscious, naked from the waist down, and Appellant is attempting, unsuccessfully, to put V.L.'s underwear back on.[87] At the hospital, her vaginal injuries were documented and her blood alcohol level was approximately 0.3%. Evidence of Appellant's DNA evidence was also found.

The military judge stated on the record that "from the very beginning, the government had charged this in the alternative. . . . [I]f the finder of fact came back and convicted on both specifications, then one specification would be conditionally dismissed."[88] As stated above, this is a common practice in courts-martial.[89]

Appellant argues an additional nuance here, that a *Mendoza*-type problem arises because Article 120(b)(2)(B) – which Appellant was not charged with – proscribes sexual acts "when the person knows that the other person is asleep, unconscious, or otherwise unaware that the sexual act is occurring." According to Appellant, (1) this is a separate theory of liability under *Mendoza*, and (2) he was not on notice to defend against it.

We agree with Appellant that under *Mendoza*, "asleep or unconscious" (Article 120(b)(2)(B)) is a separate theory of liability from capable of consenting but not consenting (Article 120(b)(2)(A)). We also observe that Appellant was not charged under this subsection. However, with respect to Article 120(b)(3)(A) as charged in Specification 2, the statute defines "incapable of consenting" as "(A) incapable of appraising the nature of the conduct at issue; or (B) physically incapable of declining participation in, or communicating unwillingness to engage in the sexual act at issue." Obviously, a person who is passed out drunk is incapable of appraising the nature of any sexual conduct that is

---

[86] R. at 469.

[87] Pros. Ex. 3.

[88] R. at 1055.

[89] *See, e.g., United States v. Harpole,* 77 M.J. 231, 233 n.1 (C.A.A.F. 2018) ("following findings, the military judge dismissed one sexual assault specification 'subject to final review of' Appellant's case because the alternative sexual assault specifications were charged for 'contingencies of proof.'"); *United States v. Guzman,* 79 M.J. 856, 864-65 (C.G. Ct. Crim. App. 2020) (citing *United States v. Elespuru,* 73 M.J. 326, 329 (C.A.A.F. 2014)); *but cf. Mendoza,* 85 M.J. at 231 (Sparks, J. concurring) (noting that the majority alludes to the "long-standing practice of charging in the alternative to accommodate contingencies of proof" and cautioning military judges to only send one of the contingent offenses to the trier of fact.)

happening and is also physically incapable of declining to participate or communicating unwillingness to engage in it.

In this case, the fact that Appellant could also have been charged with an additional specification, also in the alternative with the other two, in no way diminishes the fact that he was on notice that he was charged with committing a sexual act without consent from V.L. and with committing a sexual act when V.L. was incapable of consenting when she was impaired by alcohol and Appellant reasonably should have known that. Unlike the appellant in *Mendoza*, Appellant in this case was not convicted of something he was not charged with. The evidence that V.L. was incapable of consenting because she was impaired by alcohol to the point of eventual unconsciousness, was both circumstantial and direct, and is overwhelming. Although the members returned findings that indicate that they *might* have believed beyond a reasonable doubt that the sexual assault began while V.L. was awake, they unquestionably found that the sexual assault occurred during (or perhaps continued into) the period of time when she was incapacitated.

We hold that the conviction for Specification 2 of the Charge is legally sufficient.[90]

### 2. Factual sufficiency

Specification 2 of the Charge alleged that Appellant penetrated V.L.'s "vulva with his penis, with the intent to gratify" his sexual desire, "when [V.L.] was incapable of consenting to the sexual act because she was impaired by an intoxicant" (alcohol), and Appellant "reasonably should have known of that condition."[91] The military judge noted that these two specifications were charged in the alternative, for contingencies of proof, and she conditionally dismissed Specification 2 after the members announced their findings.[92] As stated *supra*, we reinstate and affirm the finding of guilty for Specification 2.

At oral argument, Appellate Defense Counsel properly conceded that Appellant had not raised factual sufficiency of Specification 2 as an assignment of error, and further conceded that the time to do that would have been when

---

[90] We consider the legal sufficiency of Specification 2 because the specification was conditionally dismissed after findings were announced. *United States v. Harpole*, No. 1420, 2016 CCA Lexis 763 at *1 n.1 (C.G. Ct. Crim. App. Nov. 10, 2016), *rev'd on other grounds*, 77 M.J. 231 (C.A.A.F. 2018).

[91] Charge Sheet.

[92] R. 1055-57.

filing a brief that requested that Specification 1 be set aside.[93]  When counsel explicitly argued on direct appeal for a result that would reinstate the guilty finding for a conditionally dismissed specification, we hold that failure to challenge the factual sufficiency of that conditionally dismissed specification constitutes waiver.

**E. There was no plain error in trial counsel's closing argument.**

Appellant contends that the Government's closing argument impermissibly shifted the burden of proof to Appellant.

### a. Standards of review

We review improper argument de novo.[94] If proper objection is made, we review for prejudicial error, but if no objection is made, an appellant has forfeited his right to appeal, and we review for plain error.[95] The burden of proof under plain error review is on the appellant.[96] Plain error is an error that is clear or obvious and results in material prejudice to a substantial right.[97]

### b. Trial Counsel's arguments in this case

Trial counsel's closing argument spans 22 pages of trial transcript.[98] There was no Defense objection during the closing argument or the rebuttal argument.

The Defense cites to  trial counsel's argument that "there was no evidence that [V.L.] consented to the sexual activity" and argues that this "impermissibly shifted the burden of proof to Appellant."[99] Trial Counsel said, in relevant part,

> Fact: the accused had never met [V.L.] before. They didn't know each other at all before that night, and still don't to this day. They didn't have any mutual friends. They weren't friends on social media. They didn't know each other from Adam. They were complete

---

[93] Official Audio of 16 June 2025 Oral Argument in *United States v. Grafton* at 00:09:20.00.

[94] *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018).

[95] *Id.*

[96] *See id.* (citing *Sewell*, 76 M.J. at 18).

[97] *United States v. McPherson*, 81 M.J. 372, 377 (C.A.A.F. 2021).

[98] R. at 978-1000.

[99] Defense Supp. Brief at 13 (citing R. at 985).

and total strangers when they were on that elevator shaft. There is absolutely no evidence that she consented to have sex with a total stranger on the floor of an elevator or gave him any kind of reasonable mistake of fact that she consented to have sex with him. No.[100]

c. <u>Analysis</u>

We do not believe that this argument was a comment on Appellant's failure to testify or that it otherwise somehow shifted the burden of proof to Appellant. Accordingly, we do not find plain error. Regardless, trial counsel clearly made this statement in the context of arguing Specification 1.[101] But, as we set aside the finding of guilty as to Specification 1 and affirm only the finding of guilty as to Specification 2, assuming arguendo that any plain error exists, it is harmless beyond a reasonable doubt.

**F. It was not erroneous for the military judge to instruct the members that they could find Appellant guilty of both Specifications 1 and 2. The members' findings were not legally impossible.**

Appellant argues that the military judge should not have allowed the members to find Appellant guilty of both Specifications because one cannot be both capable and incapable of consent at the same time. As discussed above, the military judge noted that "from the very beginning, the government had charged this in the alternative. . . . [I]f the finder of fact came back and convicted on both specifications, then one specification would be conditionally dismissed."[102] Appellant nonetheless finds some support contained in dicta in Judge Sparks's concurring opinion in *Mendoza*, wherein he states that the majority alludes to the "long-standing practice of charging in the alternative to accommodate contingencies of proof" and advises military judges to only send one of the contingent offenses to the trier of fact.[103]

---

[100] R. at 985.

[101] R. at 985. Trial Counsel's argument as to Specification 2 begins on page 993.

[102] R. at 1055; s*ee, e.g., United States v. Harpole*, 77 M.J. 231, 232 n.1 (C.A.A.F. 2018) ("following findings, the military judge dismissed one sexual assault specification 'subject to final review of' Appellant's case because the alternative sexual assault specifications were charged for 'contingencies of proof.'"); *United States v. Guzman*, 79 M.J. 856, 864-65 (C.G. Ct. Crim. App. 2020) (citing *United States v. Elespuru*, 73 M.J. 326, 329 (C.A.A.F. 2014)).

[103] *Mendoza*, 85 M.J. at 231 (Sparks, J., concurring)

The Government generally conceded that when an appellate court determines that two guilty findings are mutually exclusive, it generally cannot affirm either finding.[104] But here, the Government argues that there were two crimes: the first when V.L. was in the elevator and was capable of consenting but did not consent, and the second when she was incapable of consenting shortly thereafter as the alcohol she had drunk rendered her incapable of consenting.[105] However, the problem for the Government is this was not the theory that trial counsel argued in his closing argument as to Specification 1, when he argued that V.L. did not consent because she was unconscious.[106] We are aware that this was a theory of non-consent that was commonly instructed to members pre-*Mendoza* and also under earlier versions of Article 120.[107] So it was not the case that the members necessarily found something that was legally or logically impossible.[108]

Further, regardless of whether, in light of *Mendoza*, it was error to allow both Specifications to go to the members in this case, it is harmless beyond a reasonable doubt. Because in light of the instructional error discussed for Specification 1 above, we will set aside the finding of guilty as to Specification 1 and instead reinstate and affirm only the finding of guilty as to Specification 2.

### G. We reassess the sentence and affirm it.

In *United States v. Winckelmann*, the CAAF set forth factors for this Court to consider when determining whether to reassess a sentence or order a rehearing.[109] Those factors are:

---

[104] Government's Brief at 66 (citing *United States v. Clark*, 20 C.M.A. 140, 42 C.M.R. 140 (C.M.A. 1970)).

[105] Government's Brief at 67.

[106] R. at 990.

[107] *See, e.g.*, *United States v. Brassil-Kruger*, 2020 CCA LEXIS 671 (A.F. Ct. Crim. App. Nov. 18, 2022).

[108] Appellant's Supp. Brief at 22.

[109] 73 M.J. 11, 15-16 (C.A.A.F. 2013). There is some logical merit to the dissent's position that *Winckelmann* should not apply to this case as we are not actually reassessing the sentence, but rather sentencing Appellant *ab initio* for a specification for which he was never sentenced at court-martial. If we were to find *Winckelmann* inapplicable and remand for a sentencing hearing on this reinstated specification, it would logically (and indeed necessarily) follow that the confinement portion of the sentence would not be limited to 8 years under Rule for Court-Martial 810(d), as that was adjudged for a different specification now set aside. A remand would be a sentencing

(1) Dramatic changes in the penalty landscape and exposure. . . .

(2) Whether an appellant chose sentencing by members or a military judge alone. As a matter of logic, judges of the courts of criminal appeals are more likely to be certain of what a military judge would have done as opposed to members. This factor could become more relevant where charges address service custom, service discrediting conduct or conduct unbecoming.

(3) Whether the nature of the remaining offenses capture the gravamen of criminal conduct included within the original offenses and, in related manner, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses.

(4) Whether the remaining offenses are of the type that judges of the courts of criminal appeals should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial.[110]

Applying the *Winckelmann* factors is a pedestrian task in this case; thus we easily reassess and affirm the sentence adjudged by the members: to be discharged with a dishonorable discharge, to be reduced to the paygrade of E-1, to forfeit all pay, and to be confined for 8 years.[111] We find that affirming the finding of guilty for Specification 2 and setting aside Specification 1 does not change the penalty landscape, as the maximum punishment for both is identical, and includes up to 30 years of confinement. Although Appellant was sentenced by members for Specification 1, we are confident that the sentence would have been the same if they had instead sentenced him for Specification 2. The evidence admitted at trial to prove, and the gravamen of, the two specifications is the same – indeed it was the same act.[112] And we are confident that we have sufficient experience and familiarity with sentencing in this type

---

hearing for a different crime, and the maximum confinement available would logically be 30 years. Regardless, this Court in *Parker* applied *Winckelmann* as we do today, and so we decline to break this new ground here. *See Parker*, 75 M.J. at 619-20.

[110] *Id.*

[111] R. at 1135. The adjudged sentence does not include forfeiture of allowances, just "all pay." This is likely due to an error in the sentencing worksheet (AE XXXIV). The military judge instructed the members that they could adjudge a forfeiture of "all pay and allowances." R. at 1112. The Defense does not raise this inconsistency as an assignment of error, and we need not examine it further.

[112] *See, e.g., Toney*, 2017 CCA LEXIS 1 at *5.

of case to reliably determine what sentence would have been imposed at trial.[113]

### III. CONCLUSION

After careful consideration of the record, the briefs of appellate counsel, and the oral arguments of appellate counsel, we have determined that:

The finding of guilty as to Specification 1 is **SET ASIDE** and **DISMISSED.**

Specification 2 is **REINSTATED.**

The finding of guilty as to Specification 2 is **AFFIRMED**.

The sentence is **AFFIRMED.**

---

[113] *See, e.g., Parker,* 75 M.J. at 619-20.

HARRELL, Senior Judge (concurring in part and dissenting in part):

## A. Implications of *United States v. Mendoza.*

I join my colleagues in concluding, bound as we are by precedent from the U.S. Court of Appeals for Armed Forces (CAAF), that Appellant's conviction for sexual assault without consent cannot stand due to prejudicial instructional error. *Mendoza* compels this result, though I am equally compelled to write separately to entreat our superior court to clarify its holding therein.

In the National Defense Authorization Act for Fiscal Year 2013, Congress directed the Secretary of Defense to:

> [E]stablish a panel to conduct an independent review and assessment of judicial proceedings conducted under the Uniform Code of Military Justice involving adult sexual assault and related offenses since the amendments made to the Uniform Code of Military Justice by section 541 of the National Defense Authorization Act for Fiscal Year 2012 (Public Law 112-81; 125 Stat. 1404) for the purpose of developing recommendations for improvements to such proceedings.[1]

Among the duties of this Judicial Proceedings Panel (JPP) was to:

> Assess and make recommendations for improvements in the implementation of the reforms to the offenses relating to rape, sexual assault, and other sexual misconduct under the Uniform Code of Military Justice that were enacted by section 541 of the National Defense Authorization Act for Fiscal Year 2012 (Public Law 112-81; 125 Stat. 1404).[2]

The duly established JPP did exactly that, and on 4 February 2016, it submitted a report to the Senate and House Armed Services Committees with the following recommendation, among others:

> The present language of Article 120(b)(1)(B) of the UCMJ, "causing bodily harm to that other person," should be replaced with the words "without the consent of the other person," which would remove confusion about the term "bodily harm" and would create

---

[1] 112 Pub. L. 239, § 576(a)(2), 126 Stat. 1632, 1758–59 (2013).

[2] 112 Pub. L. 239, § 576(d)(2)(A), 126 Stat. 1632, 1761 (2013).

a baseline theory of liability for any sexual act or sexual contact committed without a victim's consent.[3]

A member of the Subcommittee that developed the recommendation elaborated in the JPP report:

> [The recommendation] makes it clear to any reader that it is criminal to commit a sexual act upon another person without the consent of that person. The reader need not engage in a searching review of the MCM, *Benchbook*, or case law to have a basic understanding of the statutory language and what it forbids.[4]

Congress adopted that recommendation in the Military Justice Act of 2016.[5] Ironically, the effort to provide clarity by amending Article 120 to "provide a baseline theory of liability for any sexual act . . . committed without a victim's consent" has now—by virtue of *Mendoza*—resulted in greater opacity than before, and readers best resume their searching reviews of authorities to make sense of it.

The curious line from *Mendoza* is, "Subsection (b)(2)(A) [of Article 120] criminalizes the performance of a sexual act upon a victim *who is capable of consenting* but does not consent."[6] We must take that at face value for now, leading to the result we reach in this case. But did the CAAF intend to go so far as to add an element to this offense, putting the government in the odd business of proving capacity to consent when it pursues this theory of liability? To do so would veer more toward rewriting the statute than interpreting it. The U.S. Supreme Court has spoken repeatedly on the matter. Courts "may not narrow a provision's reach by inserting words Congress chose to omit"[7] and must "refrain from reading a phrase into the statute when Congress has left it out."[8] Similarly, courts should reject arguments that:

---

[3] Judicial Proceedings Panel, *Report on Article 120 of the Uniform Code of Military Justice*, 11 (2016).

[4] *Id*. at 81.

[5] 114 Pub. L. 328, § 5430(a), 130 Stat. 2000, 2949 (2016).

[6] *United States v. Mendoza*, 85 M.J. 213, 220 (C.A.A.F. 2024) (emphasis added).

[7] *Lomax v. Ortiz-Marquez*, 590 U.S. 595, 600 (2020).

[8] *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993). *See also Lamie v. United States Tr.*, 540 U.S. 526, 538 (2004) (rejecting an argument that "would have us read an absent word into the statute.").

> [W]ould result not in a construction of the statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. With a plain, nonabsurd meaning in view, we need not proceed in this way. There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted.

> Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding.[9]

And perhaps most instructive:

> We are not unmindful of the salutary rule which requires strict construction of penal statutes. No rule of construction, however, requires that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope -- nor does any rule require that the act be given the "narrowest meaning." It is sufficient if the words are given their fair meaning in accord with the evident intent of Congress.[10]

Additionally, inserting the words "capable of consenting" into Subsection (b)(2)(A) of Article 120 renders the article as a whole disharmonious.[11] As we see from this case, a military judge may no longer safely instruct the members on the content of Article 120 itself, since the statutory language, "A sleeping, unconscious, or incompetent person cannot consent," is irreconcilable with the CAAF's interpretation of Article 120(b)(2)(A) in *Mendoza*. At best, that language is now surplusage, another ironic result since the CAAF applied the canon against surplusage in reaching its holding.[12] Notably, that language falls under the article's discussion of "CONSENT," and not "INCAPABLE OF CONSENTING," so we must logically infer that Congress intended consideration of a person's state of sleep, unconsciousness, or incompetence (regardless of cause)

---

[9] *Lamie,* 540 U.S. at 538 (cleaned up).

[10] *United States v. Raynor*, 302 U.S. 540, 552 (1938).

[11] *See Weinberger v. Hynson, Westcott & Dunning*, 412 U.S. 609, 631-32 (1973) ("Our task in interpreting separate provisions of a single Act is to give the Act the most harmonious, comprehensive meaning possible in light of the legislative policy and purpose." (cleaned up)).

[12] It is also worth noting that "[s]urplusage does not always produce ambiguity and our preference for avoiding surplusage constructions is not absolute." *Lamie*, 540 U.S. at 536.

be considered not just in determining, as *Mendoza* suggests, whether a person was incapable of consenting (since that term is separately defined), but in determining whether there was "a freely given agreement to the conduct at issue by a competent person," i.e., consent.

Also, the language of the statute, "All the surrounding circumstances are to be considered in determining whether a person gave consent," again within the discussion of "CONSENT," has been stripped of full vigor by *Mendoza*. That is, the CAAF's opinion makes clear that there are certain circumstances, theretofore of great importance in many cases, that are *not* to be considered in determining whether a person gave consent, but only whether the person was incapable of consenting, even though that term is separately defined.

Lastly, and not for nothing, just as it did five years earlier with respect to Article 120, Congress amended 18 U.S.C. 2242, Sexual abuse, in 2022 by adding, "engages in a sexual act with another person without that other person's consent" to the statute that already criminalized, "engages in a sexual act with another person if that other person is—(A) incapable of appraising the nature of the conduct; or (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act."[13] One naturally wonders whether: (1) Congress twice made the mistake of rendering the existing provision as surplusage through use of ambiguous language; or (2) the subsequent Act confirms—by virtue of repetition—that Congress said what it meant and meant what it said in the first. I respectfully offer that the latter is more intuitive, and Congress is entitled to that presumption.[14]

Again, perhaps the CAAF did not intend to go as far as it seems, and we derive too much from *Mendoza*. And so, I respectfully urge the CAAF to consider the matter further and provide appropriate clarification.

**B. The Court should order a rehearing on the sentence.**

We have set aside the only finding of guilty for which Appellant was sentenced. I agree with that as just noted, but what to do next? There is no sen-

---

[13] 117 Pub. L. 103, § 1202(b)(3), 136 Stat. 49, 924 (2022).

[14] *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." (cleaned up)); *H.V.Z. v. United States*, 85 M.J. 8, 12 (C.A.A.F. 2024) ("When interpreting legislation, we have long presumed . . . that Congress selected the language that it intended to apply." (citation omitted)).

tence for Specification 2 for us to reassess since he was sentenced only for Specification 1. It strikes me as obvious that a court-martial should sentence Appellant in the first instance for this separate offense, and not we.[15] I accordingly dissent.

The majority offers no explanation of our authority to "reassess" a sentence for an offense that an appellant *was never sentenced for*. It merely offers up a traditional *Winckelmann* analysis. In my view, however, that case stands for the proposition that when we affirm the findings of guilty for only a residuum of offenses of and for which an appellant was convicted *and sentenced*, we then proceed to determine whether to reassess the sentence or order a sentencing rehearing. That is, if an appellant is convicted of and sentenced for multiple offenses, and we set aside a subset of those, we may reassess the sentence for the "remaining"[16] offenses. This is precisely what happened in *Winckelmann* and the three "central" cases relied upon therein.[17]

In a similar vein, if we set aside a finding of guilty for an offense and affirm a lesser included offense, we may reassess the sentence for that remaining lesser offense.[18] The commonality is that we may reassess the sentence for an offense that Appellant was already sentenced for, whether as a subset or as necessarily included within a greater offense. The majority goes further—reassessing and affirming a sentence for an offense that was not before the sentencing authority *at all*[19]—and we have drifted too far from our statutory *review* authorities.

---

[15] *See Jackson v. Taylor*, 353 U.S. 569, 581(1957) (Brennan, J., dissenting) ("The Uniform Code of Military Justice grants no power to the Board [of Review] to impose original sentences. That power is reserved exclusively to the court-martial." (citation omitted)).

[16] *United States v. Winckelmann*, 73 M.J. 11, 12, 16 (C.A.A.F. 2013).

[17] *Id.*; *Jackson*, 353 U.S. at 569; *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986); *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006).

[18] *See e.g., United States v. Codymiles*, 83 M.J. 635, 651-52 (N-M Ct. Crim. App. 2023); *United States v. Salgado*, No. 202300224, 2024 CCA LEXIS 76, at *5–6 (N-M Ct. Crim. App. Feb. 14, 2024).

[19] *See* R. at 1059. ("And members, I'm going to advise you at this time that, during these sentencing proceedings, you are going to be sentencing [Appellant] on Specification 1 of the Charge. Specification 2 is no longer in front of you. So, you will be sentencing solely on Specification 1 . . . .").

Granted, we have done this before in a published opinion, *United States v. Parker*.[20] However, that opinion, just like the majority's here, reads as though we must just accept as a truism that *Winckelmann*, and Article 66 for that matter, extends so far. Absent explanation (which I am unable to fill in myself), I am not convinced. But even if *Parker* establishes that we *can* reassess and affirm a sentence for an offense an appellant was never sentenced for, it certainly does not command that we *should*, even if the *Winckelmann* factors (to the extent they apply at all in this context (they don't)) weigh in favor of doing so. That remains a matter of discretion, and we should exercise it in a manner that affords the barest amount of process due to a servicemember convicted of an offense at a court-martial: to also be sentenced by a court-martial for that offense, and not by some other entity, no matter how highly we think of our ability to fairly do so.[21]

Since we have set aside the only finding of guilty for which Appellant was sentenced, it necessarily follows that we should set aside that sentence as well. Since we have also reinstated a finding of guilty upon a specification that was conditionally dismissed *before sentencing*, we should order a rehearing on the sentence.[22]



FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[20] 75 M.J. 603 (N-M Ct. Crim. App. 2016).

[21] To make matters worse, while declining to order a rehearing on the sentence, the majority takes the time in footnote 109 to imagine what should happen if it did—again, with nothing to support its broad propositions. What is the point of this thought exercise? All readers, but particularly military judges, should view this rare double whammy of dicta and an advisory opinion with skepticism. For it is military judges that are charged with making *rulings*—to include a determination of the maximum punishment at a rehearing—in the first instance, based on the law, and not merely on what some may view as more logical.

[22] "'[R]ehearings' refers to a proceeding ordered by an appellate or reviewing authority on the findings and the sentence or on the sentence only . . . ." R.C.M. 810(a)(2)(A) Discussion.